Roy VAIL, James VAIL and
Ronald ADCOCK *v.* STATE of Arkansas

CA CR 79-99                    593 S.W. 2d 491

Opinion delivered January 16, 1980
Released for publication February 6, 1980

*A. James Linder*, for appellants.

*Steve Clark*, Atty. Gen., by: *Dennis R. Molock*, Asst. Atty. Gen., for appellee.

DAVID NEWBERN, Judge. The appellants were charged with first degree battery and were found guilty of the lesser included offense of third degree battery, a class A misdemeanor. Ark. Stat. Ann. § 41-1603 (Repl. 1977). In points one, two and four of their brief, the appellants argue insufficiency of the evidence as a basis for conviction, error by the court in failure to instruct a verdict and error in failure of the court to enter a judgment of not guilty despite the jury's verdict of guilty. We will address these points together as they all deal essentially with sufficiency of the evidence, and we find the evidence was sufficient to make a jury question. We decline to consider the appellants' third point which urges reversal for failure to consider and failure to give instruction proffered by the appellants. The appellants did not abstract any of the instructions proffered or any instruc-

tions given by the court. See *Ellis* v. *State*, 267 Ark. 690, 590 S.W. 2d 309 (Ark. App. 1979), in which this court discusses the history of the requirement that instructions be abstracted. See also, Rule 9 (d) of the Arkansas Supreme Court and Court of Appeals, and *Williams* v. *Fletcher,* 267 Ark. 961, 593 S.W. 2d 48 (Ark. App. 1979). Another reason we decline to consider this point is that no case or other authority is cited in the appellants' brief, and no argument is made from which we might evaluate whether the appellants were prejudiced in any way by the court's handling of their proffered instructions. *Dixon* v. *State,* 260 Ark. 857, 545 S.W. 2d 606 (1977).

George Pugh kept beer in returnable bottles in a cooler in a structure adjacent to his home. He kept a close watch on the beer, placing exactly eight bottles in his ice box at a time. He suspected the beer was being pilfered, and on one occasion previous to the night of the event giving rise to this case, he chased an intruder from his yard and fired a shot, apparently for the purpose of frigtening the intruder.

On the evening of November 26, 1977, Mr. Pugh observed some of his beer was missing. He also observed a car moving slowly up and down a road behind the wooden fence at the rear of his property. Mr. Pugh obtained his loaded .22 caliber pistol from his kitchen and walked into his back yard. It was dark and although his outdoor night light was on, he saw no one. He testified that he simultaneously heard and felt a gunshot and received a wound in his face. He then ran for cover and fired his own weapon several times in various directions. He was not firing at a target, as he still saw no one. He was not seriously injured by the bullet, and he thereafter got in his car and drove it on the road behind his house where the car he had seen earlier was parked. He observed appellant Adcock in the parked car. Without getting out of his car, he returned to his home. The sheriff's office was notified, and Mr. Pugh accompanied Deputy Bates in the sheriff's vehicle.

They first sought to investigate the occupants of a pick up truck moving on a street near Mr. Pugh's house, but on seeing the truck's occupants, a young couple, decided they could not have been involved in the incident. They then

drove up to the parked car earlier referred to and found it occupied by the appellants. The appellants professed not to know what was going on. They apparently were just sitting in the car drinking beer. They cooperatively accompanied the deputy and Mr. Pugh to the "station." A later search of the car revealed several fire arms, none of which was capable of firing a .22 caliber projectile. One of the weapons was a 16 gauge shotgun. Along with other ammunition, one .22 caliber bullet was found in the car. Neither the briefs nor the record makes it clear whether it was a spent casing or an unfired bullet. In addition, a 16 gauge shotgun shell was found the following morning in the yard near where the beer was stored. A full bottle of beer was found in the yard near to where the shotgun shell was found, and several empty beer bottles of the same returnable type were found near the place where the car occupied by the appellants had been parked the previous night. The investigation also revealed the fence had two fresh bullet holes which had been made by firing through the fence from outside the yard toward the interior of the yard. There was testimony that the holes could have been made by either a .22 caliber bullet or a heavy shotgun pellet.

The bullet removed from Mr. Pugh's jaw was a .22 caliber.[1] The appellants argue no evidence whatever connects them with the crime because no .22 caliber weapon was found in the car or otherwise in their possession.

We concur in the appellee's position that it was not necessary that such a weapon be found if the other circumstantial evidence in the case was sufficient to go to the jury and thus constitute a basis for conviction.

As no one saw any of the appellants shoot Mr. Pugh, the evidence recited above is circumstantial. That does not make the evidence insubstantial. *Williams* v. *State*, 258 Ark. 207, 523 S.W. 2d 377 (1975); *Upton* v. *State*, 257 Ark. 424, 516 S.W. 2d 904 (1974). We hold the evidence found in Mr. Pugh's yard, *i.e.*, the shotgun shell and full beer

---

[1] A crime laboratory report entered as a joint exhibit said the four bullet fragments removed from Mr. Pugh's jaw were from a bullet which is of .22 caliber size, rather than from a bullet "appearing" to be .22 caliber as stated in the appellee's brief.

bottle, and the evidence found in the car occupied by the appellants and about the ground where it had been parked, *i.e.*, the guns and ammunition as well as the beer bottles of the same peculiar kind as those kept by Mr. Pugh, when combined with the fresh holes in the fence which could have been made by a .22 bullet, were sufficient to exclude, in the minds of the jurors, other reasonable hypotheses showing how Mr. Pugh was shot. Thus, we regard the evidence as sufficiently substantial to support the conviction.

Affirmed.