Robert James COOK a/k/a James Robert COOK
v. STATE of Arkansas

CR 81-60                                           623 S.W. 2d 820

Supreme Court of Arkansas
Opinion delivered November 9, 1981
[Rehearing denied December 14, 1981.*]

*ADKISSON, C.J., would grant rehearing.

*Robert F. Andrews,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant Robert James Cook was arrested on October 12, 1980. On October 14, he was charged with rape, kidnapping, attempted murder, being a felon in possession of a firearm and being a habitual offender. It is undisputed that over the next five days he asked five different police officers, being all that he saw, for the appointment of an attorney. Seventeen days after his arrest, on October 29, an attorney was appointed. During

this period he gave an in-custodial statement. His first appearance before a judicial officer was on November 13. The appellant subsequently moved to have all charges dismissed because of this lengthy delay. The trial court correctly refused to dismiss the charges because dismissal is not the appropriate remedy.

Rule 8.1 of the Arkansas Rules of Criminal Procedure, Vol. 4A (Repl. 1977), provides:

Prompt First Appearance
An arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay.

We adhere to our standard that this rule is mandatory, not discretionary, but that violation of it does not dictate a dismissal of the charges. *Bolden* v. *State*, 262 Ark. 718, 561 S.W. 2d 281 (1978). This standard, like those of searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime. On the limited issue of dismissal, the scales are tipped in favor of the State for when the defendant is found guilty he has suffered no prejudice as a result of being in jail. The remedy is to suppress the in-custodial statement, as was done. The Supreme Court of the United States, in *Gerstein* v. *Pugh*, 420 U.S. 103 (1975) at 118 stated:

In holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute. Instead, we adhere to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information. *Beck* v. *Washington*, 369 U.S. 541, 545 (1962); *Lem Woon* v. *Oregon*, 229 U.S. 586 (1913). *Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. Frisbie* v. *Collins*, 342 U.S. 519 (1952); *Ker* v. *Illinois*, 119 U.S. 436 (1886). [Emphasis supplied.]

We affirm the action of the trial court in denying the motion to dismiss all charges.

The case was eventually set for trial on Monday, March 9, 1981. On the preceding Friday, March 6, the prosecuting attorney conducted a parley which was termed a pretrial conference. All of the State's witnesses who were to testify at the trial attended, some voluntarily and some because they were subpoenaed by the prosecuting attorney. Ark. Stat. Ann. § 43-801 (Repl. 1977). The pretrial conference was conducted in the solemnity of the courtroom where the trial would take place the following Monday. The witnesses were placed under oath by the prosecuting attorney, § 43-801, and each then took the witness stand in front of the others. Each was told that perjury charges could flow from falsely testifying and the prosecutor then individually questioned them. Neither the trial judge nor the defense attorney knew of this pretrial conference until Martha McAlphin, the rape victim, disclosed it during the trial. From the beginning of the trial she, as well as all other witnesses, had been under "the rule," but she testified that she had heard the testimony of the other witnesses. She testified that the date of the incident was October 12, "as far as everybody has been telling me" and "they said he pointed the gun at Mr. Cook but I didn't see it; they told me that when we was in here; and they told me more or less what happened." The defense attorney at that time discovered what had happened and moved for a mistrial. It was denied and subsequently the appellant was convicted on all charges. We reverse the trial court for declining to grant a mistrial. This issue creates practical difficulties and we expressly limit this holding to the precise set of facts before us.

We agree with the reasoning of the trial court that this conference technically was not a violation of "the rule." Rule 615, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979) provides:

Exclusion of witnesses. — At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.

The rule is only applicable during an evidentiary hearing presided over by the court and there is no requirement to sequester witnesses by either party during the investigation or preparation of a case.

The prosecuting attorney's subpoena power stems from Ark. Stat. Ann. § 43-801 (Repl. 1977), which was passed by the General Assembly to implement the power of prosecutors to bring criminal charges by information. Amendment 21 to the Constitution of Arkansas. Ark. Stat. Ann. Vol. 1. For an excellent review of the history of the statute see Hall, *The Prosecutor's Subpoena Power*, 33 Ark. L. Rev. 122 (1979). The relevant text of the statute is as follows:

> The prosecuting attorneys and their deputies shall have authority to issue subpoenas in all criminal matters they are investigating; and shall have authority to administer oaths for the purpose of taking the testimony of witnesses subpoenaed before them; such oath when administered by the prosecuting attorney or his deputy shall have the same effect as if administered by the foreman of the grand jury.

Appellant contends that the language of the statute limits the use of the subpoena power to "matters they are investigating." We do not so narrowly interpret the statute. The emergency clause states that the statute was enacted to enable prosecutors "to properly prepare criminal cases." Therefore, subpoenas may be used to bring in witnesses to interrogate them about a case under investigation as well as to review their testimony before trial but after the case has been investigated. However, in this particular case, there was an abuse of the prosecutor's subpoena power. The results of this particular procedure go beyond the realm of trial preparation, they even go beyond an effective denial of "the rule." This procedure, without cross-examination, could be utilized to lead a recalcitrant witness to a desired answer in front of the others. Each would have heard the cajoled answers and each would understand the answer which the prosecuting attorney expected him or her to give. The pressure to conform could be great. The prospective witness would then give the desired answer under oath and

in front of all the other witnesses. Each could then be warned of the penalty of perjury. All of this would take place immediately prior to trial and in the solemnity of the courtroom in which the case is to be tried. The result could well be that the witness would not have time to evaluate the process and then, at trial, the witness would parrot the cajoled answer. Equally as bad, this unreported procedure could serve as an effective method for a prosecutor to avoid disclosure of witnesses' statements. The abuse of the prosecutor's subpoena power in this manner could result in denying a defendant a fair and impartial trial. We do not question the good faith of the prosecutor in this particular case, but if this procedure were allowed to stand, a trial tactic would be authorized which could easily result in oppressive prosecutorial trial tactics. We disapprove of such a procedure. We conclude that the trial judge, upon learning what had happened, should have granted the motion for a mistrial and then rescheduled the case after an appropriate period of time.

Appellant makes other arguments which are not necessary to discuss for they are either without merit or not likely to recur at trial.

Reversed and remanded.