Avery Nathan RICHARDSON
*v.* STATE of Arkansas

CR 84-13                              671 S.W.2d 164

Supreme Court of Arkansas
Opinion delivered June 25, 1984
[Supplemental Opinion on Denial of Rehearing
November 5, 1984.]

*Carl J. Madsen, P.A.,* for appellant.

*Steve Clark,* Att'y Gen., by: *Theodore Holder,* Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant was convicted of first degree murder and arson, resulting in consecutive sentences of forty years for murder and twenty years for arson. Two points for reversal are raised: The trial court erred in denying a motion to suppress custodial statements because the appellant was not promptly brought before a judicial officer and in denying a motion to suppress evidence because of an

## ERRATA

### *283 ARKANSAS REPORTS at page 82*

Detach at perforation, moisten the back, and paste over the bracketed information pertaining to the supplemental opinion that appears under "Supreme Court of Arkansas" "Opinion delivered June 25, 1984" in the heading of *Richardson v. State* on page 82:

 [Supplemental Opinion on Rehearing November 5, 1984.]

invalid arrest in violation of the Fourth and Fourteenth Amendments to the Constitution. We affirm.

On September 1, 1982 the burned body of Lester Richardson was found among the ashes of his home in Arkansas County. Later that day appellant, his father and step-mother, who lived nearby and who reported the fire, were taken to the sheriff's office for questioning. While there, appellant was charged with public intoxication, searched and placed in a jail cell. Ten days later he was charged with murder and arson, but not until October 25, 1982 was he brought before a judicial officer, at which time counsel was appointed.

Appellant gave three custodial statements between the time of his arrest and his appearance before a judicial officer. The first was given on the evening of September 1, and two later ones on October 5 and 6. Appellant submits that all three statements must be suppressed because of the inordinate delay in compliance with A.R.Cr.P. Rule 8.1, which provides:

> An arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer *without unnecessary delay.* (Our italics.)

We have held that compliance with this rule is mandatory, *Bolden* v. *State,* 262 Ark. 718, 561 S.W.2d 281 (1978), and in *Cook* v. *State,* 274 Ark. 244, 623 S.W.2d 820 (1981) we said that a delay of seventeen days in presenting an accused to a judicial officer constituted a violation of Rule 8.1, and that the remedy was not a dismissal of the charges, but the suppression of in-custodial statements. See *Gerstein* v. *Pugh,* 420 U.S. 103 (1975).

The State, appropriately, concedes that a delay of fifty-six days, which occurred in this case, cannot be defended, with which we emphatically agree. However, the state submits that the error is harmless because the three statements are all exculpatory, in that they merely give appellant's account of how Lester Richardson accidentally dis-

charged a 20 gauge shotgun as he was changing the sheets on a bed for the appellant, his nephew, to sleep in. Whether the nature of the statements requires reversal cannot be determined, as none of the three statements is abstracted and their admission may have been harmless. At least we are not willing to presume that the statements are prejudicial when their content is not divulged and we have no way of knowing whether they are incriminating. Rule 9(d) of the Rules of the Supreme Court provides that appellant's abstract should include "such material parts of the pleadings, proceedings, facts, documents, and other matters in the record as are necessary to an understanding of all questions presented to this court for decision." While the rule uses the word *"only"*, that cannot excuse the total omission of exhibits or other material, the substance of which is essential to a determination of whether appellant's argument has merit, and warrants a reversal of the judgment. *Adams v. State,* 276 Ark. 18, 631 S.W.2d 828 (1982); *Byers v. State,* 267 Ark. App. 1097, 594 S.W.2d 252 (1980); *Vail v. State,* 267 Ark. App. 1078, 593 S.W.2d 491 (1980); *Ellis v. State,* 267 Ark.App. 690, 590 S.W.2d 309 (1979).

The remaining argument is that other evidence should have been suppressed because it was obtained by a search based on an invalid arrest. Appellant submits that his arrest for public intoxication was a mere pretext to aid the state in its investigation of the felony charges which were later filed. We cannot sustain that contention. The proof established that appellant had been drinking the night before and showed the effects of alcohol when he was brought to the sheriff's office around midday on September 1. During the next hour or so he made frequent trips to the rest room as he became increasingly inebriated, until he was arrested, searched and an empty half pint whiskey bottle found in his boot. The proof that his condition justified the charge is not seriously challenged. Appellant's argument is based on nothing more than the mere assumption that the motive for his arrest related to the murder and arson crimes and not to the fact that he was, by all accounts, publicly drunk. Appellant submits that the offense of public intoxication, as defined in Ark. Stat. Ann. § 41-2913, requires an element missing here, i.e. a likelihood that the accused poses a

danger to himself or to the persons or property of others. But the appellant was a possible suspect for homicide and arson and the circumstances were entirely sufficient to place him under arrest for being drunk in public. It is not necessary that a dangerous propensity from excessive alcohol become manifest before the police are justified in arresting someone for being intoxicated in a public place.

We cannot overlook the extraordinary delay in bringing this appellant before a judicial officer as required by A.R.Cr.P. Rule 8.1. Abuses of this sort warrant the strongest censure. The sheriff, along with the prosecuting attorney, was and is primarily responsible for this breach of responsibility. Furthermore, the circuit judge as the head of the local judicial system, must set the tone of justice in his circuit. If he oversees the system properly, it should work well; if he neglects it, it will result in similar abuses. We note, parenthetically, that neither the Circuit Judge nor the Prosecuting Attorney, currently serving in Arkansas County, were holding office at the time appellant was held improperly.

The exclusionary rule was created by the United States Supreme Court to remedy flagrant violations of constitutional rights. *Weeks* v. *United States,* 232 U.S. 383 (1914); see also *Cook* v. *State,* 274 Ark. 244, 623 S.W.2d 820 (1981). Its purpose is to deter improper practices in our legal system. *Arkansas* v. *Sanders,* 442 U.S. 753 (1979). While many believe the exclusionary rule should be changed (and it is being relaxed), the reasons for its existence are arguably valid simply because no effective alternative has been found. Other writers have discussed the advantages and disadvantages of the rule. See Schroeder, *Deterring Fourth Amendment Violations: Alternatives to the Exclusionary Rule,* 69 vol. J. 1361, 1423 (1981); Oaks, *Studying the Exclusionary Rule in Search and Seizure,* 37 U. Chi. L. Rev. 665 (1970). Cf. Dellinger, *Of Rights and Remedies: The Constitution as a Sword,* 85 Harv. L. Rev. 1532 (1972).

However, the question remains, how do we prevent a sheriff from wrongdoing or require him to do his duty? Unfortunately, we can't as a practical matter, because

prosecutors are reluctant to intervene. But we can express disapproval of such conduct, and we must, if a relaxation of the exclusionary rule is to be justified. Theoretically, there are remedies for victims of such abuses through civil litigation, and we should not discourage such recourse. But that is not enough, officials must be called publicly to account and given more than perfunctory admonishment; they must be censured and the people of the locality informed that their legal system has failed to work in the manner contemplated by our constitution. The responsibility in such cases must be placed on those officials who failed in their duty. It is unfair to the public, indeed it is wrong, to permit a defendant to escape prosecution for a crime because of such mistakes, unless his right to a fair trial is actually prejudiced. See *Pace* v. *State,* 265 Ark. 712, 724, 580 S.W.2d 689 (1979). At the same time, officers of the judicial system must answer to the public for their neglect.

*The judgment on the sentences is affirmed.*

PURTLE, HOLLINGSWORTH and DUDLEY, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. The majority quotes Rule 8.1 of the Arkansas Rules of Criminal Procedure and then completely abolishes it. There is no longer any requirement that an arrested person be promptly taken before a judicial officer. The appellant was held 56 days before he was taken before a judicial officer. This court stated in *Bolden* v. *State,* 262 Ark. 718, 561 S.W.2d 281 (1978): "Rule 8.1 is designed and has as its purpose to afford an arrestee protection against unfounded invasion of liberty and privacy. Moreover, the person under arrest taken before a judicial officer without unnecessary delay will have the charge[s] explained, will be advised of his constitutional rights, and will have counsel appointed for him if an indigent, and arrangements for bail can be made expeditiously . . . Indeed, these are basic and fundamental rights which our state and federal constitutions secure to every arrestee. Hence, we conclude that Rule 8.1 is mandatory in its scope." We reaffirmed the *Bolden* holding in the case of *Cook* v. *State,* 274 Ark. 244, 623 S.W.2d 820 (1981). In *Cook* we stated: "We adhere to our standard that this rule is

mandatory, not discretionary, but that violation of it does not dictate a dismissal of the charges." *Bolden* v. *State, supra,* and *Gerstein* v. *Pugh,* 420 U.S. 103 (1975). The period of detention in *Cook* was 31 days. I cannot understand why this court held in 1981 that 31 days was excessive and in 1984 can hold that 56 days is not excessive. The majority opinion overrules *Bolden* and *Cook* in addition to Rule 8.1 and the state and federal constitutions. For a rule to be effective it must be followed. This is obviously a case of intentional pretrial detention which is in direct contradiction to the spirit of our laws and constitutions.

I also believe the appellant was illegally arrested under the pretext of public intoxication. He was taken from his home, obviously not a public place, and taken to the county jail where he was apparently allowed to drink additional alcohol before being arrested. The evidence is quite clear that appellant was already intoxicated when he left his home in custody of the sheriff, where he remained until his arrest for public intoxication. There was no evidence whatsoever that appellant was in violation of the statute. In fact some of the officers testified that he was already drunk when they brought him in. Public intoxication is defined by Ark. Stat. Ann. § 41-2913(1) (Repl. 1977) which states: "A person commits the offense of public intoxication if he appears in a public place manifestly under the influence of alcohol or a controlled substance to the degree and under circumstances such that he is likely to endanger himself or other persons or property, or that he unreasonably annoys persons in his vicinity."

Since the arrest was illegal and the detention was unreasonably long before appellant was allowed to appear before a judicial officer, I would suppress the evidence obtained pursuant to such arrest and detention. There is plenty of evidence from which a conviction may be legally obtained. To allow an arrestee to be detained for 56 days without a probable cause hearing is to utterly destroy Rule 8.1 and render the state and federal constitutions meaningless in respect to pretrial detention. I would reverse and remand.

ROBERT H. DUDLEY, Justice, dissenting. While the appellant was intoxicated in his own home, a deputy sheriff knocked on the front door and said the police wanted to question him. It is undisputed that the police had neither an arrest warrant nor a search warrant and did not have probable cause for either type of warrant. Appellant was taken to the police station and, after more than an hour, was arrested for being drunk in a public place, the police station. In his shirt pocket one of the officers found a #6 shot .20 gauge yellow W & W shotgun shell. The public drunkenness charge was dismissed. The trial court refused to suppress the shell as evidence in the case before us. The ruling was erroneous and prejudicial. I would reverse.

The Fourth Amendment gives greatest protection to a person in the sanctity of his home. *Payton* v. *New York,* 445 U.S. 573 (1980). This appellant was in his home and the state admitted that he was not even a suspect in the case before us. Appellant was not warned that he had no obligation to go to the police station. *See* A.R.Cr.P. Rule 2.3. A state policeman testified " . . . he was being detained against his will for questioning and we asked him, we asked him to come in for questioning and he didn't tell us no, but, yes sir, we had him there. As a practical matter I did not ask him to come in for questioning as I sent a deputy out to pick him up." This seizure of the person was either an arrest or an investigatory stop. For the purpose of discussing the issue, the distinction does not matter, for investigatory stops, just as arrests, are subject to the restraints imposed by the Fourth Amendment. Here, appellant was unreasonably seized at his home and, unless there was some intervening act by appellant which justified his arrest, the seizure of the shotgun shell was constitutionally impermissible.

The state has not proven that appellant committed some new and intervening offense for which he could be validly arrested. Deputy Sheriff Ellenburg, who caused appellant to be arrested for public intoxication, testified as follows:

Q. And he was at the Sheriff's Office because you had

sent somebody, Deputy Rowe, I believe to pick him up, is that correct?

A. That's correct.

Q. Can you describe Nathan's condition when he arrived at the Sheriff's Department?

A. Ah, yes, sir.

Q. Would you do so.

A. He, ah, that night Nathan was intoxicated. The next morning when he was brought in, ah, you could still see the affects [sic] of, ah, of being intoxicated. If I've explained myself.

Q. All right. In other words he was more than just hung over he was still kind of intoxicated when . . . when he came into the Sheriff's Office, was he not?

A. Ah, to a certain degree, yes, sir.

Q. Then your . . . your testimony was he . . . when he arrived he was kind of intoxicated but while he was there he drank some more and became intoxicated?

A. Yes, sir.

Q. And he was not there of his own choosing?

A. No, sir.

Q. You had . . . you had him there . . . he was there at your request, is that correct?

A. Yes, sir. That's correct.

Q. And then you . . . because he was intoxicated there at the Sheriff's Office you placed him under arrest for public intoxication, or that Deputy Simpson did.

A. Yes, sir.

Thus, the state has only proven that appellant was intoxicated "to a certain degree" when he was illegally seized at his home and "became intoxicated" while unwillingly and unlawfully being detained at the police station. He committed no new or intervening offense. He only continued the same conduct.

P. A. HOLLINGSWORTH, Justice, dissenting. I dissent from the Court's affirmance of this case. Appellant was in the privacy of his home when he was taken into custody by the deputy sheriff. The deputy who ordered appellant picked up was the uncle of the victim in this homicide. Because of this relationship, I assume the unlawful police conduct was carried on throughout the investigation of the homicide. In *Bolden* v. *State*, 262 Ark. 718, 516 S.W.2d 281 (1978), we stated:

> Rule 8.1 is designed and has as its purpose to afford an arrestee protection against unfounded invasion of liberty and privacy. Moreover, the person under arrest taken before a judicial officer without unnecessary delay will have the charged [sic] explained, will be advised of his constitutional rights, and will have counsel appointed for him if an indigent, and arrangements for bail can be made expeditiously. Such action may avoid the loss of the suspect's job and eliminate the prospect of the loss of income and the disruption and impairment of his family relationship. Indeed, these are basic and fundamental rights which our state and federal constitutions secure to every arrestee. Hence, we conclude that Rule 8.1 is mandatory in its scope.

The case at bar presents no circumstances that require us to retreat from this clear mandate. All custodial statements should be suppressed.

The other evidence should have been suppressed also because it was obtained illegally. The Exclusionary Rule has been emasculated by the U.S. Supreme Court but not obliterated. I am not convinced that the facts of this case at bar comply with the latest pronouncement on the Exclusionary Rule from our highest Court. In *Nix* v. *Williams,*

___ U.S. ___ , 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the U.S. Supreme Court reiterated:

> The case rationale consistently advanced by this Court for extending the Exclusionary Rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. This Court has accepted the argument that the way to ensure such protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes.

We should not retreat from these legal principles that are well established.

I would reverse.

Supplemental Opinion on Rehearing
Reversed and Remanded November 5, 1984

678 S.W.2d 772

WEBB HUBBELL, Chief Justice. In our opinion of June

25, 1984, we affirmed the conviction of appellant, Avery Nathan Richardson, of first degree murder and arson. On rehearing, we reverse and remand for a new trial.

Appellant received consecutive sentences of forty years for murder and twenty years for arson in connection with the death of Lester Richardson, his uncle. Appellant argues two points for reversal: (1) the trial court erred in denying a motion to suppress three custodial statements because he was held in custody for fifty-six days without counsel and without being brought before a judicial officer; and (2) the trial court erred in denying a motion to suppress evidence because the arrest was in violation of the Fourth and Fourteenth Amendments of the Constitution.

In the early morning hours of September 1, 1982, the home of Lester Richardson near DeWitt, Arkansas, was badly damaged by fire. Richardson's body was found among the debris. Sometime that day a sheriff's deputy went to appellant's home, which was near the Lester Richardson dwelling, and brought appellant, his father, and stepmother to the DeWitt police office for questioning. Richardson moved about the waiting room, which was open to the public, and made frequent trips to the restroom. The Chief Deputy, Don Ellenburg, who was also appellant's uncle, said appellant became increasingly talkative, was flushed, and had a strong odor of alcohol about him. Ellenburg asked another deputy to search appellant, and an empty whiskey bottle was found in his boot.

Appellant was arrested and jailed for public intoxication. Ten days later that charge was dropped, and the murder and arson charges were filed. Not until October 25, 1982, was appellant taken before a judicial officer for arraignment and the appointment of defense counsel. During the nearly two months between arrest and arraignment, appellant gave statements relating to Lester Richardson's death, one on the day of his arrest and later ones on October 5 and 6.

Appellant insists it was error for the trial court to permit

these statements to be introduced in evidence because of the flagrant violation of Rule 8.1 of the Arkansas Rules of Criminal Procedure:

> An arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer *without unnecessary delay.* (Our italics).

The observance of this rule is *mandatory. Bolden* v. *State,* 262 Ark. 718, 561 S.W.2d 281 (1978). The state does not attempt to justify the extraordinary delay in taking appellant before a judicial officer. It argues instead that no prejudice occurred because the statements are not incriminating. It is difficult to assess this argument because the statements themselves are not abstracted. However, we have the substance of the two October statements from abstracted testimony. Chief Deputy Ellenburg testified at the suppression hearing that appellant sent for him after he had left work. Appellant's rights were explained, and appellant told of Lester Richardson having asked appellant to come and fix a butane stove. When appellant had finished, his uncle suggested he spend the night. In the process of making up a bed, Lester accidentally discharged a shotgun he kept on the bed, the charge striking him in the left chest. Appellant stopped at a rice well to wash his hands and face and noticed Lester's house was on fire. He thought an oscillating fan, knocked over when Lester fell, might have ignited a stack of newspapers. Appellant and his father called the fire department and went back to Lester's house.

The October 6 statement, given in substance through the testimony of another officer, is generally the same, though in this statement appellant said the shotgun was lying on the bed slats presumably under the mattress. The substance of the September 1 statement is not abstracted.

Although compliance with A.R. Crim. P. 8.1 is mandatory, a breach does not compel a dismissal of the charges; rather, it requires that evidence gained as a result of the unnecessary delay be suppressed. *Cook* v. *State,* 274 Ark. 244, 623 S.W.2d 820 (1981). *Gerstein* v. *Pugh,* 420 U.S. 103 (1975).

While the statements here can be said to be exculpatory in the sense that they describe the event as accidental, it can hardly be doubted that they were used to advantage by the state and worked to appellant's prejudice. They were self-contradictory, and they may have been inconsistent with other physical evidence surrounding the death of Lester Richardson.

The state contends that *Cook v. State, supra,* is distinguishable. There, an in-custodial statement was suppressed because of a thirty-one day delay. In *Cook,* the defendant repeatedly asked for the appointment of counsel whereas there is no indication appellant requested counsel. That distinction may be significant in some situations, but not where the delay extends clearly beyond any reasonable length of time. We conclude that the October 5 and 6 statements, taken after appellant had been held in jail for thirty-five days in violation of Rule 8.1 should have been suppressed.

The September 1 statement and other evidence obtained at the time of arrest do not come under the same stigma because their procurement is not tainted by what came afterward. We make no inference that the statement and other evidence are otherwise admissible as the abstract tells us almost nothing about the statement one way or the other. Our holding with respect to the violation of Rule 8.1 is limited to the two statements which were not obtained until well after the rule was breached.

Since the case is being remanded, the trial court should rehear the issue of appellant's arrest to determine whether there was probable cause to support the arrest for public intoxication, independent of murder and arson charges. In that regard, appellant's condition at the time he was picked up is of significant importance in evaluating the totality of the circumstances surrounding the arrest. Also, the circumstances under which appellant was brought to the police station are important, especially whether A.R. Crim. P. 2.2, 2.3, and 3.1 were followed. The degree of inebriation at the time of arrest is a relevant consideration. All of these circumstances should be weighed in determining whether

appellant's September 1 statement and other evidence seized should be admitted.

The petition for rehearing is granted, and the case is reversed and remanded for a new trial.

HICKMAN, J., dissents.