Gifford RAY *v.* STATE of Arkansas

CR 90-207                                              803 S.W.2d 894

Supreme Court of Arkansas
Opinion delivered February 11, 1991
[Rehearing denied March 11, 1991]

*Jeff Rosenzweig* and *Cliff Jackson*, for appellant.

*John D. Harris*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Gifford Ray, was

convicted of the first degree murder of Melvin Ward and was sentenced to life imprisonment. He raises the following points on appeal: 1) he was denied his fundamental constitutional right to present a defense; 2) his arrest was pretextual and the subsequent seizure of evidence was without constitutional justification; and 3) the trial court erred in denying his motion for continuance. We find no merit in these points, and we have determined, in accordance with Ark. Sup. Ct. R. 11(f), that the trial court made no error prejudicial to the defendant. The judgment of conviction is affirmed.

The charge against appellant arose from the following undisputed facts. Melvin Ward was shot at approximately 10:30 p.m. on February 14, 1990, as he was leaving Shari Ray's trailer near Malvern. He was taken to the hospital by ambulance and died there a short time later. As he lay on the ground before the ambulance arrived he told Deputy Sheriff Kirk McClenahan of the Hot Spring County Sheriff's Department that he did not know who shot him.

Shari Ray, appellant's former wife, lived next door to Doyle Wallis, her father. Although neither Ms. Ray nor Mr. Wallis saw appellant that night, they both told investigating officers that they thought appellant shot Ward. Ms. Ray said appellant called her about thirty minutes before the shooting and said if he could not have her nobody could. The investigating officers found prints in the leaves where the assailant knelt as he shot Ward. They also found a thermal knit shirt nearby. Mr. Wallis said that appellant had such a shirt.

Eyewitness testimony placed appellant on the road about fifty yards from Shari Ray's trailer around eleven o'clock the night of the shooting. Henderson Bates, a resident of Malvern, testified that as he was driving home from being at the local hospital with his family he saw appellant jogging on the side of the road. He said appellant was not wearing a shirt and was carrying a single barrel shotgun in his right hand. Mr. Bates said that he had known appellant through his work for several years and that he was certain of his identification of appellant. He said appellant crossed the road at no more than fifty feet directly in front of his truck and, besides the truck's headlights, there was a street light, which aided his vision.

Appellant argues in his first point that his federal and state constitutional rights of due process, fair trial, confrontation, and compulsory process were violated when the trial court granted the state's motion in limine to exclude, among other evidence, alleged threats to the victim made by a third person. Appellant made an extensive offer of proof. He sought to present this admittedly circumstantial evidence to show that someone else had a motive to kill Melvin Ward and might have done so.

Few rights are more fundamental than that of an accused to present evidence in his own defense. *Washington* v. *Texas*, 388 U.S. 14 (1967). In exercising this right, however, the accused not only must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence, *Chambers* v. *Mississippi*, 410 U.S. 284 (1973), but also must show that the evidence is both material and favorable to his case, *United States* v. *Valenzuela-Bernal*, 458 U.S. 858 (1982).

Other courts, in cases of circumstantial evidence, have held that threats to kill the victim made by other parties are relevant to prove motive to commit the killing on the part of some person other than the accused, and have allowed evidence of the threats. *Smith* v. *State*, 33 Ark. App. 37, 800 S.W.2d 440 (1990); *Murphy* v. *State*, 36 Tex. Crim. 24, 35 S.W. 174 (1896). *See also McAdams* v. *State*, 378 So. 2d 1197 (Ala. Crim. App. 1979). However, in those cases the proffered evidence involved more than just a threat.

The proffered evidence in the case at bar did not include any specific threats and certainly no threats to kill. It consisted of a March 1, 1989 incident report made by a security service at Chamberlain, Inc., a Hot Springs business, the transcript of an interview of Grace Bull conducted by the Hot Spring County Sheriff's Office, and the testimony of three other witnesses.

The incident report was dated March 1, 1989, nearly a year before Melvin Ward was shot. The report stated that a woman called Chamberlain, Inc., gave the name Grace and said, "if Mel Ward did not return her call she would blow the place up," and "[s]he also made some threat on Mel Ward's person." The report further stated that the message was given to Mel Ward.

■■ Given the date of the call and its content, its relevance is ·questionable. But, the evidence here was excluded under Ark. R. Evid. 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

An exclusion of evidence under this rule is a matter within the sound discretion of the trial judge, and his decision will not be reversed absent a manifest abuse of that discretion. *Bennett v. State*, 297 Ark. 115, 759 S.W.2d 799 (1988); *Simpson v. Hurt*, 294 Ark. 41, 740 S.W.2d 618 (1987). Considering the remoteness in time of the reported call and the absence of any subsequent calls or actions stemming from the call, we cannot say that the report was either material or particularly favorable to appellant's case. Therefore, we cannot say the trial court abused its discretion in excluding it from evidence.

Grace Bull said in the interview with the sheriff's department that within the past month she left two letters for Ward at his house. She explained the content of the letters as being expressions of love and frustration, not threats to kill. She also said she was home with her son the evening of the shooting, and Jim Coster, a friend of hers, stopped by at about 9:30 to give her a valentine.

■ The trial court, in rejecting appellant's attempt to introduce the transcript of the Grace Bull interview, said that it was collateral and would be excluded under Rule 403. He also stated her testimony was not material. Again, we cannot say the court abused its discretion in excluding this evidence.

The three witnesses whose testimonies were offered were Joyce Lynette Sevier, the woman with whom Ward lived until four days before his death; Anne Ward, Ward's former wife; and Shari Ray, the woman whose house trailer Ward was leaving when he was shot. Ms. Sevier said that she knew of two letters that someone left for Ward at his house in the month preceding his death. She said she only read one of them and that it said, "it's eleven o'clock Friday night and you're not home and I think

you're the most vile, disgusting person I have ever met and you will pay for what you have done to me and it was signed Grace."

Ms. Ward said that one night about a year before Ward was killed she received several calls from Grace Bull. She said Ms. Bull made irrational threats about putting articles in the newspaper concerning Ms. Ward's daughter being an unfit mother.

Shari Ray said that on January 27, 1990, while at Ward's house, she saw a note, which she looked at only briefly. She said she did not know exactly what the note said or who wrote it, but it was something to the effect that whoever wrote it finally found where Ward lived and would get even with him.

■ As there are no specific threats, we cannot say the trial court's finding the proffered testimony to be collateral and excludable under Rule 403 to be an abuse of discretion. Appellant has not demonstrated that the proffered evidence is either material or necessary to his defense. His right to present it, therefore, must give way to the trial court's duty to conduct the trial in accordance with the rules of evidence. Based on the foregoing, we cannot say the exclusion of the proffered evidence denied appellant any right guaranteed by the constitution.

Appellant next argues that his arrest was pretextual and neither supported by probable cause nor justified as any other constitutionally acceptable deviation from the warrant requirement. He claims that because of this allegedly illegal arrest the following evidence was seized and eventually admitted at trial: a spent .12 gauge shotgun shell, an unspent .12 gauge shotgun shell, a statement he made that he shot a dog earlier that day, and the results of a trace metal examination.

■■ We examined the law regarding pretextual arrests in *Hines* v. *State*, 289 Ark. 50, 709 S.W.2d 65 (1986), and *Richardson* v. *State*, 288 Ark. 407, 706 S.W.2d 363 (1986). In finding a pretextual arrest in *Richardson*, we recognized that although no distinct rules for defining pretextual arrest had been articulated, pretext is a matter of the arresting officer's intent, which must be determined by the circumstances of the arrest; where the intent of the officer is to make an arrest as an excuse for making a search for evidence of a different and more serious offense for which no probable cause to arrest exists, there is a

pretextual arrest. In *Hines* we distinguished the facts in *Richardson* and stated:

> Claims of pretextual arrest raise a unique problem in the law—deciding whether an ulterior motive prompted an arrest which otherwise would not have occurred. Confusion can be avoided by applying a "but for" approach, that is, would the arrest not have occurred but for the other, typically the more serious, crime. Where the police have a dual motive in making an arrest, what might be termed the covert motive is not tainted by the overt motive, even though the covert motive may be dominant, so long as the arrest would have been carried out had the covert motive been absent.

*Hines*, 289 Ark. at 55, 709 S.W.2d at 68. In *Hines*, we held that, under the circumstances presented, the arrest was not pretextual and, thus, there was no reason to apply the fourth amendment exclusionary rule.

Appellant's arrest resulted from the following circumstances. Deputy Sheriff Mike Collie, after being told by an investigating officer at the scene of the shooting that appellant was a suspect, drove to appellant's house. As he passed the house he could see appellant inside through the living room window. Deputy Collie pulled in a driveway about a quarter of a mile down the road and observed appellant's house. He saw appellant leave in his car; Deputy Collie followed him. When Deputy Sheriff Alvin Lee arrived in the area, Deputy Collie turned on his blue lights and appellant pulled over. After appellant got out, Deputy Collie saw a spent .12 gauge shotgun shell in the front seat of appellant's car and picked it up. At that time Deputy Collie did not know what kind of gun was used in the shooting. Within two minutes of the initial stop, Henry Efird, an investigator with the Hot Spring County Sheriff's Department, arrived and Deputy Collie gave him the spent shotgun shell. Investigator Efird told appellant he was under arrest as a suspect in the shooting, advised him of his *Miranda* rights, told him they wanted to do a gunshot residue test on his hands and administer a breathalyzer, and took him to the sheriff's office.

Investigator Efird did not ask any questions while en route to the office, but appellant made the statement about shooting a dog

earlier in the day. Upon arriving at the station, Investigator Efird administered a gunpowder residue test and Deputy Lee administered a breathalyzer test. During an inventory of appellant's personal property, Raymond Crow, the jailer at the Hot Spring County Sheriff's Department, found the live .12 gauge Super X shotgun shell in appellant's pocket.

Pursuant to Ark. R. Crim. P. 3.1, a law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects has committed a felony. *See Beebe* v. *State*, 303 Ark. 691, 799 S.W.2d 547 (1990). For purposes of this rule, "reasonable suspicion" means a suspicion based upon facts or circumstances which give rise to more than a bare, imaginary, or purely conjectural suspicion. *Addison* v. *State*, 298 Ark. 1, 765 S.W.2d 566 (1989); Ark. R. Crim. P. 2.1.

■ Deputy McClenahan, one of the first officers to arrive at the scene of the shooting, knew at the time there was an outstanding warrant against appellant for terroristic threatening, which was issued pursuant to an affidavit signed by Shari Ray. He also knew appellant caused disturbsances in the area on past occasions. When he was told at the scene that Gifford Ray had done it, he radioed in to the dispatcher that appellant was a possible suspect and personally related that information to Deputy Collie. A warrantless arrest is to be evaluated on the basis of the collective information of the police. *Jackson* v. *State*, 274 Ark. 317, 624 S.W.2d 437 (1981). Given the information the officers had at the time of the stop, it was reasonable for Deputy Collie to believe that appellant committed the shooting.

■ When he arrived at the location of the stop, Investigator Efird had already been to the scene of the shooting and to the hospital. At the scene of the shooting Deputy McClenahan told him that appellant was a "possible suspect." Mr. Wallis told him that he thought appellant did it and that appellant wore thermal shirts like the one that was found. At the hospital emergency room the physician who treated Ward's gunshot wounds gave Investigator Efird a shotgun pellet that had fallen from Ward's body. Investigator Efird arrested appellant following Deputy Collie's giving him the spent shotgun shell. Ark. R. Crim. P. 4.1 authorizes a law enforcement officer to arrest a

person without a warrant if he has reasonable cause to believe that such person has committed, among other offenses, a felony or a traffic offense involving driving a vehicle while under the influence of any intoxicating liquor. Probable cause to arrest without a warrant does not require that degree of proof sufficient to sustain a conviction. *Roderick* v. *State*, 288 Ark. 360, 705 S.W.2d 433 (1986). Under the circumstances here, we cannot say appellant's arrest was pretextual.

Appellant was arrested; the gunpowder residue test and breathalyzer were administered; and he was booked for driving a vehicle while under the influence of an intoxicating liquor. We determined the arrest was made in compliance with the law. Appellant raises no contention regarding the breathalyzer, but claims the gunpowder residue test was administered in violation of his constitutionally protected rights. Under the circumstances, we disagree.

The gunpowder residue test was administered because appellant was a suspect in the shooting. Under exigent circumstances, such as where the opportunity to make the test will exist only for a short time, certain warrantless instrusions have been held to be reasonable and not in violation of any protected rights. *See Schmerber* v. *California*, 384 U.S. 757 (1966); *United States* v. *Bridges*, 499 F.2d 179, *cert. denied*, 419 U.S. 1010 (1974). Appellant submitted to the test without protest and we find the test was reasonable in light of the exigent circumstance. Had appellant washed his hands, the chance to conduct the test would have been gone.

Although appellant was eventually charged and held for driving while under the influence of liquor, the police actions taken in regard to his being a suspect in the shooting did not violate his constitutionally protected rights.

Appellant next argues the court erred in denying his motion for continuance. The denial of a motion for continuance is within the discretion of the trial court and will be reversed only for an abuse of discretion. *Wilson* v. *State*, 297 Ark. 568, 765 S.W.2d 1 (1989). The appellant bears the burden of showing that the trial court's denial of a continuance was an abuse of discretion, and, in order to show abuse of discretion, the appellant must show that he was prejudiced. *Gonzales* v. *State*, 303 Ark.

537, 798 S.W.2d 101 (1990). In exercising its discretion concerning a request for a continuance to obtain the presence of a witness, the following factors should be considered by the trial court: (1) the diligence of the movant, (2) the probable effect of the testimony at trial, (3) the likelihood of procuring the attendance of the witness in the event of a postponement, and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. *Butler* v. *State*, 303 Ark. 380, 797 S.W.2d 435 (1990); Ark. Code Ann. § 16-63-402 (1987). Furthermore, where there is no evidence that a witness can ever be procured, denial of a continuance is proper. *Doles* v. *State*, 280 Ark. 299, 657 S.W.2d 538 (1983).

Appellant contends that a proper defense at trial required the presence of Grace Bull and, as she made herself unavailable for service, the case should have been continued in order for him to locate her. Under the circumstances presented, we do not agree.

This case was originally set for trial on June 6, 7, and 8, 1990. One motion for continuance was granted because one of appellant's co-counsel had a scheduling conflict. The trial was rescheduled for June 28, 1990. We note that no subsequent motion for continuance is found in the record. However, in a side bar conference immediately preceding the presentation of the state's case-in-chief, appellant's counsel stated, "we have previously, also, of course, moved for a continuance on the grounds that we are not able to find Ms. Bull." The trial court denied the motion for a continuance finding there was nothing to show either that Grace Bull was a material witness or that there would be any assurance she would be found and produced if the trial were delayed.

Whether or not an appropriate motion for continuance was made, in light of the findings by the court, appellant has failed to show that he was prejudiced. Based on the foregoing, we cannot say the trial court erred in its ruling.

Appellant in a final point asserts a hodgepodge of "other claims." Among these claims he lists his motions for directed verdict and to reduce the charge, the court's refusal to excuse a juror for cause, the introduction by the state of an allegedly misleading photograph, and the admission into evi-

dence of the photographs of Ward's body. However, he presents no argument or authority regarding these "other claims." This court does not consider arguments unsupported by convincing argument or authority. *Ross* v. *State*, 300 Ark. 369, 779 S.W.2d 161 (1989).

Affirmed.