**James HAYES Plaintiff**

v.

**FAULKNER COUNTY, ARKANSAS; Marty Montgomery, Sheriff of Faulkner County, in his individual and official capacities; and Kyle Kelly, Major, in his individual and official capacities Defendants**

No. 4:01–CV–00198–WRW.

United States District Court,
E.D. Arkansas,
Western Division.

Sept. 22, 2003.

James M Hayes, Conway, AR, Pro se.

Gordon S. Rather, Jr., Wright, Lindsey & Jennings, Little Rock, AR, for plaintiff.

Michael R. Rainwater, James Stephen Holt, Scott Paris Richardson, Duncan & Rainwater, Little Rock, AR, for defendants.

## MEMORANDUM OPINION AND ORDER

WILSON, District Judge.

### I. STATEMENT OF FACTS

On October 15, 1997, a Vilonia police officer issued two citations to Plaintiff James Hayes ("Plaintiff" or "Hayes") for not having tags and vehicle insurance. Mr. Hayes was instructed to appear in the Vilonia Municipal Court on November 10, 1997. He did not appear as ordered, and two arrest warrants were issued. Each warrant had a cash-only bond amount set by the court.

On April 3, 1998, an Arkansas State Trooper stopped Mr. Hayes for an unrelated traffic violation. When the officer discovered that there were two outstanding warrants, he arrested Mr. Hayes, placed him on the court's docket for May 11, 1998, and jailed him at the Faulkner County Detention Center ("FCDC"). Mr. Hayes was not able to post bond and remained in jail at the FCDC until May 11, 1998, when he appeared in court for the first time since his arrest, pled not guilty, and was released with orders to appear before the judge on May 27, 1998. On May 27, Mr. Hayes appeared as ordered, and the charges against him were dismissed.

On April 3, 2001, Mr. Hayes filed a *pro se* Complaint against Faulkner County, Arkansas (the "County"), alleging that he should have been "taken before a judicial officer without unnecessary delay" under Rule 8.1 of the Arkansas Rules of Criminal

Procedure and, because he was not taken before a judge, his due process rights under the United States Constitution were violated.[1]

The County filed a Motion for Summary Judgment on September 27, 2001, alleging: (1) Mr. Hayes was arrested according to a valid warrant and held as ordered by the Vilonia Municipal Court until his scheduled appearance; therefore, the 38–day detention complied with the Court's schedule; (2) County officials are entitled to the defense of qualified immunity; and (3) Mr. Hayes should not have sued the County because the doctrine of *respondeat superior* does not apply.

On August 23, 2003, I denied the County's Motion, holding that Mr. Hayes' 38–day detention before his first appearance hearing, notwithstanding the fact that Mr. Hayes was arrested under a valid warrant, violated Mr. Hayes' due process rights.[2] I concluded that "summary judgment was not appropriate because questions of fact existed regarding whether the 38–day delay was due to a County policy or custom, or whether it was unique to Plaintiff."[3]

Mr. Hayes later amended his Complaint to add Sheriff Martin "Marty" Paul Montgomery ("Sheriff Montgomery") and Major Kyle Kelley, the Jail Administrator for Faulkner County ("Major Kelley"). The County objected to the Amended Complaint, asserting that the statute of limitations barred the addition of new parties.[4] I overruled the County's objection, holding that the amendment was proper under the "relation back" doctrine. On March 3, 2003, a bench trial commenced in this case. I find in favor of Plaintiff for the reasons set forth below.

## II. DISCUSSION

Mr. Hayes brings his claims against Defendant under 42 U.S.C. § 1983, which provides, in relevant part that:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."[5]

The Eighth Circuit has determined that a pretrial detainee's claims are "properly analyzed under the Due Process Clause of the Fourteenth Amendment,"[6] and that pretrial detainees are entitled to protection "at least as great" as that afforded to convicted prisoners under the Eighth Amendment.[7] Although the Eighth Circuit has *not* yet determined the appropriate standard to apply in cases concerning a pretrial detainee's due process rights, the United States Supreme Court has suggested that, if a convicted prisoner may prevail by proving that prison official were "deliberately indifferent" to his constitutional rights under the Eighth Amendment, the same standard satisfies the fault requirement of due process claims filed by pretrial detainees.[8]

---

1. *See Kentucky Dept. of Corrs. v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

2. Doc. No. 36.

3. *Id.*

4. Doc. No. 47.

5. 42 U.S.C. § 1983.

6. *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 905 (8th Cir.1999).

7. *Id.* at 906.

8. *See County of Sacramento v. Lewis,* 523 U.S. 833, 850, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

## A. FAULKNER COUNTY'S LIABILITY

 Mr. Hayes first asserts that Faulkner County is liable for his 38–day detention in the FCDC. The Supreme Court has determined that government entities, such as the County, are "persons" subject to liability under 42 U.S.C. § 1983.[9] A government entity may only be held liable for injuries caused by the government itself.[10] In order to prevail against the County, Mr. Hayes must prove: (1) that he had a constitutional right; (2) that the governmental entity had a policy; (3) that the policy amounted to deliberate indifference to his constitutional rights; and (4) that the policy was the moving force behind the constitutional violation.[11]

### 1. Mr. Hayes' Constitutional Right

 In this case, Mr. Hayes had a constitutional right to be taken before a judge within a reasonable time after his arrest, to ensure that "basic and fundamental rights" were protected under the state and federal constitutions.[12] In *Gerstein v. Pugh*,[13] the Supreme Court addressed the rights of an individual arrested without a warrant and held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."[14] Under Rule 8.1 of the Arkansas Rules of Criminal Procedure, this same right extends to an individual arrested under a validly executed warrant.[15]

Rule 8.1 provides that "[a]n arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay."[16] The Arkansas Supreme Court has addressed Rule 8.1 on numerous occasions, and has recognized that:

> Rule 8.1 is designed and has as its purpose to afford an arrestee protection against unfounded invasion of liberty and privacy. Moreover, the person under arrest taken before a judicial officer without unnecessary delay will have the charge[s] explained, will be advised of his constitutional rights, and will have counsel appointed for him if an indigent, and arrangements for bail can be made expeditiously. Such action may avoid the loss of the suspect's job and eliminate the prospect of the loss of income and the disruption and impairment of his family relationship. Indeed, these are basic and fundamental rights which our state *and federal constitutions* secure to every arrestee.[17]

Under Rule 8.1, a person may be detained "only for as long as it takes to process 'the administrative steps incident to arrest.'"[18] An extended detention without this first appearance "substantially

---

**9.** See *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**10.** See *Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

**11.** *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992)(citing *City of Canton v. Harris*, 489 U.S. 378, 389–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Monell*, 436 U.S. at 690, 98 S.Ct. 2018; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 471, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

**12.** *Bolden v. State*, 262 Ark. 718, 724, 561 S.W.2d 281, 284 (1978).

**13.** 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

**14.** *Id.* at 114, 95 S.Ct. 854.

**15.** See *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir.1998).

**16.** ARK. R. CRIM. P. 8.

**17.** *Bolden*, 262 Ark. at 724, 561 S.W.2d at 284 (emphasis added).

**18.** *Wayland v. City of Springdale, Ark.*, 933 F.2d 668, 670 (8th Cir.1991).

impinges upon and threatens" the rights protected by the hearing.[19] Therefore, "federal due process simply does not permit the state to detain an arrestee indefinitely without procedural protections."[20]

The Arkansas Supreme Court has held that "compliance with [Rule 8.1] is mandatory,"[21] not discretionary.[22] The sheriff and prosecuting attorney are responsible if the rule is not followed.[23] The police may not absolve themselves of liability by merely notifying the prosecuting attorney's office of an accused's arrest.[24] For violations of this rule, "there are remedies for victims ... through civil litigation."[25]

Defendants correctly assert that there is no specific guidance in Rule 8.1, or in the Commentary, as to what constitutes an "unnecessary delay." However, in *Cook v. State*,[26] the Arkansas Supreme Court held that a delay of 31 days before bringing an accused to a judicial officer violated Rule 8.1. In *Richardson v. State*,[27] the court held that a delay of 35 days violated the rule.[28] Therefore, even though Rule 8.1 does not specify what is meant by the phrase "unnecessary delay," the law as it

existed before Mr. Hayes' arrest clearly established that Mr. Hayes had a constitutional right to be taken before a court *by the police* long before 38 days had passed,[29] and he wasn't. The County's failure to take Mr. Hayes before the court not only deprived him of a constitutionally-protected liberty interest, but also compromised his right to be advised of the charges against him, his right to have counsel appointed to represent him, if appropriate, and his right to have a judge determine whether he should be released on bail.[30]

## 2. Faulkner County's Policy

The evidence established that Faulkner County adopted a policy which violated Plaintiff's constitutional right to be taken before a judge without unnecessary delay.[31] A "policy" is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[32] According to the Supreme Court, a single decision

---

**19.** *Armstrong*, 152 F.3d at 573.

**20.** *Id.*

**21.** *Bolden*, 262 Ark. at 723, 561 S.W.2d at 284.

**22.** *Cook v. State*, 274 Ark. 244, 246, 623 S.W.2d 820, 821 (1981).

**23.** *Richardson v. State*, 283 Ark. 82, 85, 671 S.W.2d 164, 166 (1984).

**24.** *Wayland*, 933 F.2d at 670.

**25.** *Richardson*, 283 Ark. at 86, 671 S.W.2d at 167.

**26.** 274 Ark. 244, 623 S.W.2d 820 (1981).

**27.** 283 Ark. 82, 678 S.W.2d 772 (1984).

**28.** *Id.* at 91, 678 S.W.2d at 774; *see also Coleman v. Frantz*, 754 F.2d 719, 723 (7th Cir.1985) (holding that plaintiff's eighteen-day

detention violated plaintiff's due process rights).

**29.** Because it is clear that this delay was unnecessary, I do not need to decide exactly what constitutes an "unnecessary delay" under Rule 8.1. *See Duncan v. State*, 291 Ark. 521, 527, 726 S.W.2d 653, 656 (1987); *see also Coleman*, 754 F.2d at 725 (suggesting that, to "specify after what period of time a given detention not accompanied by a first appearance becomes constitutionally infirm ... would amount to inappropriate judicial legislation.").

**30.** *Bolden*, 262 Ark. at 724, 561 S.W.2d at 284.

**31.** *Tuttle*, 471 U.S. at 818, 105 S.Ct. 2427.

**32.** *Pembaur*, 475 U.S. at 483–84, 106 S.Ct. 1292.

by a policymaker may give rise to governmental liability.[33]

■ It is undisputed that Sheriff Montgomery is one of the County's official policymakers. He had "custody, rule, and charge of the jail within his county and all prisoners," and was authorized to "appoint a jailer for whose conduct [he was] responsible." [34] Sheriff Montgomery appointed Major Kelley to supervise the FCDC, and the two officers developed the County's official policies and procedures.

According to Sheriff Montgomery and Major Kelley, the County adopted a policy which required that each arrestee be taken before a court no more than 72 hours following a person's arrest. However, also as a matter of policy, when a person is arrested, the sheriff's office notifies the court by sending an entire jail roster to every court in the County. The sheriff's office then relies on the court to schedule hearings, to call the FCDC, and to identify which detainees the court will pick up for hearings.[35] Mr. Hayes was subject to the same policy, procedure, custom, or practice as every other inmate at the FCDC. Accordingly, Plaintiff has established that Sheriff Montgomery and Major Kelley, as officials with final policymaking authority, adopted a policy for which the County is responsible.

### 3. Faulkner County's Policy was Deliberately Indifferent to Mr. Hayes' Constitutional Rights

■ Next, I hold that the County's adopted policy, or custom or practice, was "deliberately indifferent" to Plaintiff's constitutional rights, for which the County may be held liable.[36] "Deliberate indifference" is defined as the "conscious disregard of known or obvious dangers," [37] and a policy may be said to be "deliberately indifferent" when the "need for more or different action 'is so obvious, and the inadequacy [of the current procedure is] likely to result in the violation of constitutional rights.' " [38]

The facts in this case are similar to those in *Oviatt v. Pearce*.[39] In *Oviatt*, the plaintiff was arrested and cited for unlawful use of a motor vehicle. When the plaintiff failed to appear for a pretrial conference, a bench warrant was issued. After his arrest, the plaintiff was held for an extended period of time. The *Oviatt* court held that, even though the plaintiff was confined according to a bench warrant, he was nevertheless "entitled to a speedy court appearance to determine whether he should be released pending trial," [40] which the county's policy consciously disregarded. In so holding, the court was critical of the authorities because the jail had "no

---

**33.** *Id.* at 480, 106 S.Ct. 1292; *see also Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1324–25 (7th Cir.1993).

**34.** ARK. CODE ANN. § 12–41–502.

**35.** These policies were presented to the Faulkner County Quorum Court by the Sheriff and Major Kelley, and were not rejected. The evidence is unclear whether the deference given to the court was an actual policy presented to the quorum court; however, a plaintiff may also prevail if he can prove that the violation was caused by a continuing, widespread, persistent pattern, or "custom," of unconstitutional misconduct by the county's employees, even if the practice was not formally approved by the County. *See Pemb-*

*aur*, 475 U.S. at 484 n. 10, 106 S.Ct. 1292; *see also Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir.1999).

**36.** *City of Canton*, 489 U.S. at 389, 109 S.Ct. 1197 (holding that the existence of a policy, alone, is insufficient to trigger local governmental liability under 42 U.S.C. § 1983).

**37.** *Armstrong*, 152 F.3d at 577.

**38.** *City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197.

**39.** 954 F.2d 1470 (9th Cir.1992).

**40.** *Id.* at 1475.

internal procedures for keeping track of whether inmates had received an arraignment,"[41] and concluded that the policy of relying on "inmates, attorneys, family members, court personnel, and members of the jail staff" to notify the jail of missed arraignments or court appearances was insufficient.[42]

Similarly, in *Armstrong v. Squadrito*,[43] the plaintiff asserted that the "will call" policy at the jail, under which the jail placed a detainee's name on a list and then delegated its responsibility to take each detainee before the court to the court's personnel, was constitutionally inadequate. The Seventh Circuit rejected this procedure, recognizing that "a policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference."[44] The court reasoned that:

> Jailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and for how long they have sat there. They are the ones directly depriving detainees of liberty .... [T]he sheriff's department ... [is] charged with taking those arrested ... to court. The jail knew this ... [but] promulgated a policy under which it abdicated responsibility. The jail acts at its own peril if it passes responsibility off on another party-whether [to] the courts or the prosecutor.[45]

Under these cases, the County cannot adopt a policy in which the sheriff's office simply submits the names of those confined in jail to the court and then waits for the court to schedule a hearing. Major Kelley's testimony seems to suggest that, because Mr. Hayes had access to telephones, pencil and paper, and could have contacted a bail bondman or a lawyer at any time to help secure his release, the County should not be held liable. However, I agree with the *Oviatt* and *Armstrong* courts, which held that the police cannot delegate its responsibility to take an arrested person before a court for a prompt first appearance.

### 4. Faulkner County's Policy caused Plaintiff's Injury

█ Finally, there is no question that the County's policy caused Plaintiff's injuries, or was the "moving force behind [the deprivation of his] liberty."[46] Even in the absence of a written policy, a county may be liable if the county failed to develop procedures, rules, or regulations, or if the County's failure to develop a policy was "closely related to the ultimate injury."[47] As discussed above, the County deferred to the court to schedule arrestees' initial appearance hearings, as a matter of policy. This policy caused the County to detain Mr. Hayes for more than one month before he was finally taken before a court. Accordingly, because Mr. Hayes has proven that the County had a policy or custom which was deliberately indifferent to his constitutional rights and caused Mr. Hayes' injuries, Faulkner County is liable.

41. *Id.* at 1473.

42. *Id.*

43. 152 F.3d 564 (7th Cir.1998).

44. *Id.* at 578–79.

45. *Id.* (suggesting that the government may escape liability if it accepts complaints from detainees, if the government actually investigates the complaints filed by inmates). Here,

although the County had a policy of accepting complaint forms, Major Kelley did not investigate Mr. Hayes' claims or take any action to help Mr. Hayes, because the sheriff's office deferred to the court.

46. *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 808 (8th Cir.1994).

47. *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197; *see also Tilson*, 28 F.3d at 807 and *Cornfield*, 991 F.2d at 1326.

## B. INDIVIDUAL LIABILITY OF OFFICERS

Plaintiff also asserted that Sheriff Montgomery and Major Kelley must be held liable for his injuries in their individual capacities. Defendants contend that their actions did not violate Plaintiff's constitutional rights because they complied with Rule 8.1. Specifically, Defendants assert that Mr. Hayes was arrested under a warrant for which a judicial officer had already determined that probable cause existed, a judicial officer had already determined that Mr. Hayes could be released if he paid a cash-only bond, and a court appearance was scheduled at the time of his arrest. Thus, Defendants insist, the 38–day confinement did not violate Rule 8.1 or Mr. Hayes' rights under the Fourteenth Amendment.

■ I do not agree, and I now hold that Major Kelley is liable in his individual capacity for violating Plaintiff's constitutional rights; however, Sheriff Montgomery is not. The evidence showed that Sheriff Montgomery did not know that Mr. Hayes was in jail. Nor did he know, until much later, that Mr. Hayes was held for 38 days. Finally, Sheriff Montgomery did not know that Mr. Hayes has submitted grievance forms to Major Kelley, in which Mr. Hayes complained about the length of his confinement. Under these circumstances, Sheriff Montgomery did not possess the level of personal knowledge and awareness typically required in order to hold a county official liable in his individual capacity.

■ In order to state a claim against an individual official under 42 U.S.C. § 1983, Plaintiff must prove: (1) that the official's conduct subjected him to a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States; and (2) that the official's actions were taken "under color of law." [48] Under section 1983, "[a] person 'subjects' another to the deprivation of a constitutional right ... if he does an affirmative act, or omits to perform an act which he is legally required to do that caused the deprivation of which [the] complaint is made." [49] In other words, an official may be personally liable for a constitutional violation of another's rights if an official "acts or fails to act with deliberate or reckless disregard of plaintiff's constitutional rights." [50] For the same reasons discussed in the preceding section, there is no question that Mr. Hayes' constitutional rights were violated, nor is there any question that Major Kelley acted under color of law at all relevant times.

■ Despite the fact that Mr. Hayes has established that Major Kelley violated his constitutional rights,[51] Major Kelley contends that he is protected by qualified immunity. Qualified immunity shields a government official for conduct that does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [52] Thus, an official is not immune from liability under section 1983 if: (1) "he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [Plaintiff];" or (2) if the official acted "with the malicious intention to cause a deprivation of constitutional rights or other inju-

---

**48.** *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Jennings v. Davis,* 476 F.2d 1271, 1276 (8th Cir.1973).

**49.** *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978).

**50.** *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982).

**51.** *See Ebmeier v. Stump,* 70 F.3d 1012 (8th Cir.1995).

**52.** *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

ry." [53] The defendant's actions "must be considered in light of not only the sincerity in his belief that what he was doing was right, but the reasonableness of his actions in the circumstances." [54] However, the Eighth Circuit has held that "[w]here it is patently obvious that [the defendant's] conduct will oppressively harm another person, and he acts with reckless disregard of a person's constitutional rights, a submissible case is made." [55]

 Major Kelley asserts that he is entitled to qualified immunity because his actions complied with the requirements of Rule 8.1. The facts and law do not support this assertion. Rule 8.1 of the Arkansas Rules of Criminal Procedure and case law, as it existed at the time of Mr. Hayes' arrest, required the sheriff's office to ensure that a pretrial detainee is taken before a court without unnecessary delay. The sheriff's office cannot delegate this responsibility to others. Accordingly, there is no question that Plaintiff's detention was prohibited under clearly established law in existence at the time of Mr. Hayes' arrest and detention.

I also believe that Major Kelley's actions, or failure to act, constituted a "reckless disregard" for Plaintiff's constitutional rights. When Major Kelley received Mr. Hayes' grievance forms, he made a conscious decision to do nothing. Although Major Kelley testified that he was bound by the date set by the court, he did not *know* the circumstances surrounding Mr. Hayes' arrest. He did not know that the warrant for Mr. Hayes' arrest specified that he was to be held under a "cash-only" bond or that the May 11, 1998, court date had been set, until after Mr. Hayes filed his Complaint in this action. He was un-

aware of whether Mr. Hayes' name had been submitted to the court for a first hearing. Finally, Major Kelley did not call the booking officer, the prosecuting attorney, or the court; nor did he examine Mr. Hayes' file, to which he had access, to determine the validity or seriousness of Mr. Hayes' grievance.

I am also troubled by the fact that Major Kelley testified that he would have followed this same course of conduct, even if Mr. Hayes had been held for 99 days, out of deference to the Vilonia Municipal Court. Be that as it may, in this case, Major Kelley did nothing to ensure that Mr. Hayes rights were protected and Mr. Hayes was unconstitutionally held in the FCDC for 38 days, *even though* there were two earlier dates, April 13 and April 29, 1998, when he *could have* gone to court. Under these facts, qualified immunity is not applicable. Not only had the Arkansas Supreme Court "clearly established" that the sheriff's office had a duty to take each arrestee before a court for a prompt first appearance, it had also held that even shorter detentions violated a detainee's constitutional rights. Therefore, Major Kelley is liable, in his individual capacity, for the deprivation of Mr. Hayes' constitutional rights and resulting injuries.

### C. RELATION BACK DOCTRINE

 Defendants maintain that the County and Major Kelley cannot be held liable in this case because Plaintiff did not amend his Complaint to include Sheriff Montgomery and Major Kelley, in their official and individual capacities, until long after the statute of limitations expired. However, in *Schiavone v. Fortune*,[56] the United States Supreme Court held that an

---

53. *Id.* at 815, 102 S.Ct. 2727.

54. *Guzman v. Western St. Bank of Devils Lake,* 540 F.2d 948, 952 (8th Cir.1976).

55. *Id.*

56. 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

amendment "relates back" to the date the original Complaint was filed, if four requirements are met:

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.[57]

Reading Mr. Hayes' original *pro se* Complaint liberally, as I am required to do,[58] I overruled Defendants' objections before the trial began. I continue to hold that the Amended Complaint was proper, under Rule 15 of the Federal Rules of Civil Procedure.

First, in his original Complaint, Mr. Hayes alleged that the Faulkner County Sheriff's Office detained him for 38 days before he was taken to court. These same allegations are repeated in Mr. Hayes' Amended Complaint, and there is no question that the allegations against Sheriff Montgomery and Major Kelley arose out of the same events outlined in Mr. Hayes' original Complaint.[59]

Second, Sheriff Montgomery and Major Kelley received notice that Mr Hayes had filed a lawsuit. When Mr. Hayes filed his first Complaint on April 3, 2001, the Complaint was directed to Sheriff Montgomery's attention. Sheriff Montgomery then forwarded the Complaint to the County's lawyer. Major Kelley, in turn, provided Mr. Hayes' FCDC file to the lawyer. These facts show that Sheriff Montgomery and Major Kelley knew that Mr. Hayes had filed a lawsuit; accordingly, they were not prejudiced when they were compelled to defend against Mr. Hayes claims.[60]

Third, Sheriff Montgomery and Major Kelley knew, or should have known, that Mr. Hayes' action would have been brought against them *if* Mr. Hayes had a legal background or legal representation. Mr. Hayes testified that he made a conscious decision *not* to sue individual officers; however, his decision was based, in part, on the fact that he had previously sued the local prosecutor and judge. Both were later held to be immune; therefore, when Mr. Hayes filed his second lawsuit, he assumed that Sheriff Montgomery and Major Kelley were also immune. However, Mr. Hayes' knowledge of the law is limited and, although he may not have known that officials are *not* always immune from liability, Sheriff Montgomery and Major Kelley knew otherwise. Because they may be charged with knowledge of the law, Sheriff Montgomery and Major Kelley should have known that, but for Mr. Hayes' legal mistake, they would have been named in his initial Complaint.[61]

---

**57.** *Id.* at 29, 106 S.Ct. 2379; *see also Ayala Serrano v. Lebron Gonzalez,* 909 F.2d 8, 12 (1st Cir.1990).

**58.** *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Ayala Serrano,* 909 F.2d at 12.

**59.** *Schiavone,* 477 U.S. at 29, 106 S.Ct. 2379.

**60.** *See id.; see also Singletary v. Pa. Dept. of Corr.,* 266 F.3d 186, 195 (3d Cir.2001); and *Varlack v. SWC Caribbean, Inc.,* 550 F.2d 171, 175 (3d Cir.1977) (holding that a defendant had adequate notice of a pending lawsuit when the person inadvertently saw a copy of the Complaint naming the place where he worked and an "unknown employee," which he knew referred to him).

**61.** *See Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 557 (7th Cir.1996); *see also Woods v. Indiana Univ.—Purdue Univ.,* 996 F.2d 880, 887–88 (7th Cir.1993) (recognizing that Rule 15(c) "contemplates ... retrospective application of an amended complaint ... when plaintiff *or plaintiff's attorney* realizes that the defendant should have been named at the outset.").

Finally, Sheriff Montgomery and Major Kelley undoubtedly received notice of the pending lawsuit within 120 days after Mr. Hayes filed his Complaint because the County's Answer to Plaintiff's Complaint was filed only one month after the Complaint was filed.[62] Under these circumstances, the Amended Complaint adding Sheriff Montgomery and Major Kelley was proper under Rule 15 of the Federal Rules of Civil Procedure and "related back" to the date the original Complaint was filed.

### D. DAMAGES AND ATTORNEY'S FEES

Mr. Hayes is entitled to recover damages from the County and Major Kelley, individually, to compensate him for the personal humiliation and embarrassment, mental anguish and emotional distress, damage to his reputation, physical injuries, and economic losses he suffered as a result of his 38–day incarceration. However, I decline to award punitive damages, as a matter of discretion.[63] Additionally, because Plaintiff is the prevailing party in this case, he should be awarded a reasonable attorney's fee.

### 1. Damages

Compensatory damages are appropriate in actions brought under 42 U.S.C. § 1983 if an "official acted with such an impermissible motivation or with such disregard [of the plaintiff's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith."[64] Damages "are not limited to the out-of-the-pocket pecuniary loss the plaintiff suffers ... [but] can be awarded for emotional and mental distress even though no actual damages are proven."[65] An award may also include

---

**62.** Even if the two officers did not receive *actual* notice, they did receive constructive notice of the pending lawsuit, which also satisfies *Schiavone*. First, under the "identity of interest" principle, which imputes knowledge to a newly-named defendant "when the original and newly-added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced," there is little doubt that a complaint against the County for alleged misconduct would not immediately be brought to the attention of the Sheriff, who is responsible for each inmate, arrestee, and deputy in Faulkner County, and to the attention of his appointed jail administrator. *Ayala Serrano*, 909 F.2d at 12. Second, under the "shared attorney" principle, which imputes notice to a newly-named defendant who shares the same attorney as the originally-named defendant because the attorney probably "communicated to the [added] party that he may very well be joined in the action," the individual defendants received constructive notice of this lawsuit. *Singletary*, 266 F.3d at 196; *see also Garvin v. Philadelphia*, 2002 WL 31739948 (E.D.Pa.2002) (explaining that "the prescribed limitations period" refers to 120–day period granted to the plaintiff to serve a copy of the summons and complaint under Rule 4(m) of the Federal Rules of Civil Procedure).

**63.** In order to recover punitive damages, a plaintiff must show more than "a bare violation of section 1983." *See Wade v. Haynes*, 663 F.2d 778, 785 (8th Cir.1981). He must also prove that the defendant acted "with actual knowledge that he was violating a right 'secured by the Constitution and laws' or 'with reckless disregard of whether he was ... violating such a right.'" *Guzman*, 540 F.2d at 953; *see also Walters v. Grossheim*, 990 F.2d 381, 385 (8th Cir.1993). Punitive damages are never awarded as a matter of right, no matter how egregious the defendant's conduct may have been, and governmental entities are immune from liability for punitive damages under section 1983. *Smith v. Wade*, 461 U.S. 30, 36, 52, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

**64.** *Guzman*, 540 F.2d at 951; *see also Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) (holding that "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents ...," provided the governmental entity received notice and an opportunity to respond).

**65.** *Guzman*, 540 F.2d at 952.

damages for "impairment of reputation ... [and] personal humiliation." [66] Compensatory damages are mandatory,[67] and should compensate the plaintiff for the losses he has suffered through the "deprivation of his constitutional rights." [68] Alternatively, presumed damages, which act as a "substitute for ordinary compensatory damages," [69] are appropriate when a plaintiff seeks compensation for an injury that is "likely to have occurred[,] but [is] difficult to establish." [70]

▆▆▆▆ Mr. Hayes suffered personal humiliation and embarrassment as a result of his incarceration because people in his hometown knew that he had been in jail, and have ridiculed him about his experience. Moreover, although Mr. Hayes could once secure a $500,000 bond when he worked for a banking equipment company, he could no longer do so because he had been in jail. Before his arrest, Mr. Hayes often ran errands for construction crews to earn extra money; after his release, Mr. Hayes has trouble finding part-time employment because he had been in jail. In other words, Mr. Hayes' reputation in the community was compromised as a result of his confinement.

Next, Mr. Hayes contended that he experienced mental anguish and emotional distress as a result of his incarceration. Although he had not consulted a physician, Mr. Hayes testified that he often experienced feelings of unprovoked anger. Things which should have only mildly irritated him caused him to "explode" in front of others, which in turn caused him great embarrassment. He also explained that he was afraid that he could be arrested again and held for a long period of time for no reason. He added that he has trouble sleeping, and has had nightmares. Moreover, although he suffered from depression before his arrest, his condition had only worsened after his ordeal and his doctor prescribed Zoloft for him.

Plaintiff testified that he experienced great pain as a result of his prolonged incarceration. He ruptured a disc his back in the 1970s and had two back surgeries, one in 1979, and one in 1987.[71] He was also involved in an automobile accident, which crushed his pelvis, and has rheumatoid arthritis in his hips and shoulder. When Mr. Hayes was in jail, he testified, his injuries were aggravated because he was forced to sleep on a thin mattress on the floor of his over-crowded cell for an extended period of time. Moreover, during his incarceration, Mr. Hayes was briefly denied medication for his cholesterol level, blood pressure, emphysema, and depression. He subsequently had difficulty breathing and became congested.

Financially, Mr. Hayes was injured because his home and property were left unattended while he was detained in the FCDC. The electricity at his home was disconnected, and everything in his refrigerator spoiled. When he was released, Mr. Hayes used his money to register his vehicle and to pay for insurance. Ultimately, although Mr. Hayes was released on May 11, 1998, he was unable to return to his home until June 3, two months after his arrest. Under these circumstances, compensatory damages are appropriate.

---

66. *Memphis Comm. Sch. Dist. v. Stachura,* 477 U.S. 299, 306, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).

67. *Smith,* 461 U.S. at 52, 103 S.Ct. 1625.

68. *Stachura,* 477 U.S. at 306, 106 S.Ct. 2537.

69. *Id.* at 310, 106 S.Ct. 2537.

70. *Id.*

71. As a result of his injury, Plaintiff was disabled and, at the time of his arrest, received less than $700 each month from the Social Security and Veteran's administrations.

### 2. Attorney's Fees

 Under 42 U.S.C. § 1988, I am authorized to award Mr. Hayes, as the prevailing party, "a reasonable attorney's fee as part of the costs," and have decided to do so.[72] The plaintiff must not only show that he is entitled to an award, but must also document "the appropriate hours expended and hourly rates."[73] Although "a lawyer is not required to record in great detail how each minute of his time was expended,"[74] the records should explain how hours were "allotted to specific tasks-for example, how many hours were spent researching, how many interviewing the client, how many drafting the Complaint, and so on."[75]

The Supreme Court has also recognized that "[a] request for attorney's fees should not result in a second major litigation."[76] Therefore, before I determine the amount of compensatory damages to which Mr. Hayes is entitled and an appropriate attorney's fee, I direct the parties to first attempt to agree on an appropriate amount themselves. They are directed to notify me within fifteen (15) days of this Order, whether or not settlement attempts have succeeded; and Mr. Hayes' lawyer should supplement his Motion for Attorney's Fees with more detailed records within that time. Defendants will have ten days after Plaintiff submits additional records to file written objections to Plaintiff's Motion.

### III. CONCLUSION

Faulkner County is liable for the unconstitutional policies and customs adopted by Sheriff Montgomery and Major Kelley, in their official capacities. Major Kelley is also liable in his individual capacity be-cause Arkansas law clearly imposed upon him a duty to ensure that the prisoners under his care were taken before a court without unnecessary delay, and because Major Kelley did not investigate Plaintiff's grievances. Major Kelley's actions were "deliberately indifferent" to Mr. Hayes' rights, and are not protected by qualified immunity. If the parties are unable to settle the amount of damages and attorney's fees, I will consider Plaintiff's Motion for Attorney's Fees and Defendants' objections, and will enter an Order awarding compensatory damages and attorney's fees and costs. I may set oral arguments on either or both issues.

---

**72.** 42 U.S.C. § 1988.

**73.** *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

**74.** *Id.* at 437 n. 12, 103 S.Ct. 1933.

**75.** *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983).

**76.** *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933; *see also Emery v. Hunt,* 272 F.3d 1042 (8th Cir.2001).